**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Alaa Khalifa,<br><br>Petitioner,<br>v. | ) | No. 26-5018 |
| Todd M. Lyons, *in his official capacity* as Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security;<br><br>Markwayne Mullin, *in his official capacity* as Secretary, U.S. Department of Homeland Security; and<br><br>Todd Blanche, *in his official capacity* as Acting Attorney General of the United States;<br><br>John M. Allen, SCOPS Deputy Assoc. Dir. Of Adjudications, US CIS, Potomac Service Director<br><br>Respondents. | ) | Administrative Procedure Act Complaint<br><br>**A #: 078-854-477** |

## Introduction

Petitioner challenges the government's denial of his I-90 Application to Replace his Lawful Permanent Residence card. That denial is attached as Ex. 1. The government granted two such applications- the second of which it changed to a denial- before denying his third effort to replace his card, based on his not being a permanent resident. His permanent

residency grant was not the result of a mistake or fraud. The grant of lawful permanent residency was based on an I-130 filed by his second wife, Ream Masoud. That petition was denied after it was the basis of issuing Petitioner permanent residency to do security work for the US government. The government's issuance of a replacement green card proves this point well beyond a preponderance of the evidence.

The outcome of this suit is critically important because the government has begun removal efforts for the second time against Petitioner, based on the same facts.

Mr. Khalifa's case began with an NTA issued on April 6, 2005, alleging he was an overstay from an entry on June 24, 1999 using a B-2 visa. He admitted those allegations, but asserted eligibility for adjustment of status based on his marriage to a U.S. Citizen, Ream Masoud. This was his second marriage, which has since dissolved. His first marriage was to Jamie Kunzer, which ended on May 12, 2005. Mr. Khalifa married Reem Masoud a USC, and filed a new petition on June 21, 2006. That petition remained pending without comment from U.S. CIS until September 7, 2007, when it issued a Notice of Intent to Deny ("NOID"), claiming Mr. Khalifa committed fraud when he married and petitioned through Jamie Kunzer. Ms. Kunzer's petition was allegedly withdrawn by Ms. Kunzer on December 10, 2004. Ms. Kunzer recanted that leveraged "confession" later in a much more thorough statement offered to EOIR.

The government issued permanent residency to Mr. Khalifa on December 22, 2006 and issued a green card. The FBI and CIA agents explained to Mr. Khalifa that the target of the investigation had enough clearance to check on whether Mr. Khalifa was in fact a LPR, so it had to be real. See copy of card attached as *Ex. 2*, showing "Resident Since December 22, 2006". It was delivered in the U.S. CIS greencard sleeve/mailed attached as Ex. 3.

The government's effort to undo what it facilitated, appears to rely on inapplicable evidence created between 2009, when it issued a replacement card to Mr. Khalifa, and 2013 when he sought a replacement once again after the government demanded his card back in open court. The permanent residency it officially issued to Mr. Khalifa was never rescinded or revoked after being issued by U.S. CIS on December 22, 2006. Mr. Khalifa uncovered this fact by applying to have his card replaced in 2009, since the government kept possession of it after he refused to continue with his work. The FBI had advised him it was revoked. This, too, was a lie, or misstatement of fact.

Mr. Khalifa's application to replace his card was filed on August 12, 2009 and resulted in a new card being issued. At his next master calendar hearing after filing his Motion to Terminate, the government attorney who appeared called a supervisor, returned and demanded the card be relinquished to the government in open court. Mr. Khalifa agreed.

Mr. Khalifa filed a new I-90 on April 14, 2013, explaining explicitly why the application was filed. See I-90 submission of April 14, 2013, attached as *Ex. 4*; receipt appears as *Ex. 5*.

It was denied on December 12, 2013 when the government, for the first time in writing, claimed there was no record of his permanent resident status. See Ex. 1. This was only half true.

The government's submission to EOIR on April 22, 2014, included its TECs II Information. See G'ment submission of documents, April 22, 2014, at 2. The TECs II printout is dated, "042613", seemingly printed on April 26, 2013, two weeks after Mr. Khalifa filed a new I-90. In its "Remarks" section, the TECs II printout states, "I-551 CARD ISSUED UNDER A#078854477 RELATING TO EAC0708151182 WAS ISSUED TO SUBJECT AS PART OF A LAW ENFORCEMENT OPERATION. THIS I-551 DOCUMENT DOES NOT NOR DID NOT

CONVEY THE BENEFITS OF A PERMANENT RESIDENT. DO NOT ADJUDICATE". *See* TECs II printout, extracted from G'ment's previously filed evidence, attached as *Ex. 6*. It is therefore only clear the government claims the original grant of LPR status on December 22, 2006 was deemed to be not-quite-real permanent residency on April 26, 2013, some 6 years and 5 months after it was granted. There is no record evidence to suggest the original grant was anything other than a real, 100% grant of permanent residency, verified by the fact that Mr. Khalifa was able to have a replacement issued, until an unknown person entered the Remarks that appear as of April 26, 2013, just two weeks after Mr. Khalifa sought another replacement card. It's command to not adjudicate, must refer to an application –the I-90, that it refers to, presumably. It appears his note was added years after his permanent residency was conferred, and after he successfully applied to replace his card.

Mr. Khalifa filed a Motion to Terminate his original EOIR proceedings. A Chicago IJ granted that motion, and the government did not appeal. See Motion & Termination Order attached as Gr. Ex. 7.

Mr. Khalifa sought naturalization based on his long-time permanent residency. The government issued a new NTA, and his N-400 was denied on the ground he was now in removal proceedings – clever way of avoiding having the real issue decided in the more deferential naturalization review proceedings that should have ensued. Those proceedings are now pending, with an initial master calendar date set for June 21, 2028 at Chicago EOIR.

Mr. Khalifa challenges his most recent effort to have a renewal card issued. He filed Form I-90 filing, with an expanded version of what the government has previously asserted- his was an actual grant of permanent residency. He is now a pharmacist, has a U.S. Citizen wife and two U.S. Citizen children. Much is at stake, and Petitioner needs resolution to continue

to live his life as a lawful permanent resident. The new I-90 denial states there is no record of permanent residence having been granted, which is of course incorrect. Two different green cards were produced, one years after his work for the government stopped. That card was produced after the government verified he was in fact a permanent resident, as the regulations required.

## Jurisdiction

1. Jurisdiction is not conferred directly by the Administrative Procedures Act, 5 U.S.C. §701 *et seq.*; rather, it is conferred by 8 U.S.C. §1331, the Federal Question statute. See e.g. *Dhakal v. Sessions*, 895 F.3d 532, 538 (7th Cir. 2018). This action is brought to challenge the denial of Petitioner's most recent I-90, as it was *ultra vires.*

## Venue

2. Venue is proper in the Northern District of Illinois, as it is where Petitioner and his family reside. 28 U.S.C. § 1391(e)(3).

## Exhaustion of Administrative Remedies

3. Administrative exhaustion is unnecessary as it would be futile. *See, e.g., Aguilar v. Lewis*, 50 F. Supp. 2d 539, 542–43 (E.D. Va. 1999). The Executive Office of Immigration Review has ordered Petitioner removed by using the wrong process. Expedited removal was statutorily unavailable, yet was used by the government and confirmed by the immigration judge as appropriate. Appealing this final administrative action through the administrative appeals in his newly filed removal proceedings, should not be required as a requirement. His permanent residency is being denied now, causing his to suffer significant financial and emotional hardship.

4. The agency does not have jurisdiction to review Petitioner's I-90 denial, because there is no appeal. See denial attached as Ex.

## The Parties

5. Petitioner Alaa Khalifa is a native and citizen of Egypt. He has resided in the United States for more than twenty-five years and has long lived and worked here as a lawful permanent resident. He presently resides in this District with his U.S. citizen wife and their two U.S. citizen children.

6. Respondent Markwayne Mullin is sued in his official capacity as Secretary of DHS. In that capacity, Respondent Mullin is responsible for the administration of the immigration laws and oversees the agencies whose actions are challenged in this Complaint.

7. Respondent Todd Blanche is sued in his official capacity as Acting Attorney General of the United States. In that capacity, Respondent Blanche is responsible for the administration of the immigration laws through the U.S. Department of Justice and the Executive Office for Immigration Review.

8. Respondent LaDeon Francis is sued in her official capacity as Field Office Director for Enforcement and Removal Operations in Chicago, Illinois, ICE. In that capacity, Respondent Francis exercises authority over enforcement actions affecting Petitioner within this District.

## Legal Background

9. The I-90 process is governed by 8 CFR 103.2 and a variety of internal US CIS memoranda and guidance, to ensure replacement cards are issued only to permanent residents. That process involves, issuing a receipt notice, a biometrics

appointment whereby the applicant renders fingerprints and a photo, in order to conduct a back ground check to ascertain the person is actually a permanent resident.

10. Applicants must go through a security/criminal check, and verification they are a permanent resident. It is also the case that USCIS is no longer prohibited from issuing an NTA when a person, meeting the definition of an egregious public safety concern, seeks an I-90. USCIS Policy Memo, PM-602-0050.1, *Updated Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Deportable Aliens* (June 28, 2018), at p. 7, ["Form I-90 applications and any adjudications involving EPS concerns where USCIS has not issued an NTA, USCIS will refer these cases to ICE after adjudication"]. If the applicant fails to appear for a biometrics capture or other required in-person process, the application "shall be considered abandoned and denied" unless by the appointment date, USCIS received a change of address or rescheduling request. 8 CFR §103.2(b)(13)(ii).

11. LPR status is verified by reference to official records, including service files, arrival manifests, arrival records, service index cards, immigrant identification cards, certificates of registry, declaration of intention issued after July 1, 1929, alien registration receipt cards/permanent resident cards (Forms AR-3, AR-103, I-151, I-551), passports and reentry permits. 8 CFR §103.2(b)(17). The government presumably followed its own regulations in adjudicating Petitioner's first I-90, resulting in a card being re-issued.

12. The Administrative Procedure Act governs the review of an agency action where a person has suffered a "legal wrong" or has been "adversely affected or aggrieved" by

agency action. 5 U.S.C. § 702. Only non-monetary relief is available under the APA, and the statute creates the cause of action. The reviewing court must either "compel agency action unlawfully withheld or unreasonably delayed" or "hold unlawful and set aside agency action, findings, and conclusions" that violate the regulations and/or INA.

13. The APA provides a waiver of sovereign immunity, for suits not involving monetary damages.

14. Courts generally agree a six (6) year statute of limitation applies to an APA claim, with the clock starting when the final agency action takes place. *Roberts v. Fed. Housing Fin. Agency*, 889 F.3d 397, 406 (7th Cir. 2018). An APA action accrues when the agency takes "an action….marking the 'consummation' of the agency's decisionmaking process", that was not of a "tentative or interlocutory nature" and had "legal consequences". Harris v. FAA, 353 F.3d 1006, 1010 (DC Cir. 2004) *quoting Bennett v. Spear*, 520 U.S. 154, 177-178 (1997).

15. APA actions are limited where, (1) another statute specifically precludes relief, and (2) where agency action is committed to agency discretion by law. 5 U.S.C §701(a)(1); 5 U.S.C §701(a)(2). The U.S. Supreme Court has held circumstances meeting the latter are rare and should only occur "where the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion". *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) *quoting Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The APA has a basic presumption of judicial review. *Abbott Labs v. Gardner*, 387 U.S. 136, 140 (1967). Unless the government shows a "clear and convincing evidence" of contrary legislative intent, the courts should not restrict

judicial review. *Id*. at 141.

16. A Court can "hold unlawful and set aside agency actions, findings and conclusions" that meet one or more of six standards. They are, (1) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law, (2) contrary to constitutional right, power, privilege or immunity, (3) In excess of statutory jurisdiction, authority, or limitations, or short of statutory right, (4) without observance of procedures required by law, (5) unsupported by substantial evidence in a case subject to 5 U.S.C. §§556 and 557 or otherwise reviewed on the record of an agency hearing provided by statute or rule, and (6) unwarranted by the facts to the extent the facts are subject to trial de novo by the reviewing court. 5 U.S.C. §706(2)(A)-(F); see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413-14 (1971)("In all cases agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law' or if the action failed to meet statutory, procedural or constitutional requirements")

## Statement of Facts

17. Petitioner entered the United States on or about June 24, 1999, using a B-2 visa.
18. On April 6, 2005, the government initiated removal proceedings against Petitioner by issuing a Notice to Appear, alleging that he had remained in the United States longer than permitted.
19. Petitioner admitted the factual allegations concerning his overstay but asserted eligibility for adjustment of status based on marriage to a United States citizen.
20. Petitioner had previously been married to Jamie Kunzer. That marriage ended on May 12, 2005. Her visa petition filed in connection with that marriage was allegedly

withdrawn on December 10, 2004. Ms. Kunzer later recanted her confession, which she claimed was made under duress.

21. Petitioner later married Reem Masoud, a United States citizen, and a new visa petition was filed on his behalf on June 21, 2006.

22. Although USCIS later issued a Notice of Intent to Deny on September 7, 2007, asserting that Petitioner had committed marriage fraud in connection with his earlier marriage, the government had already issued Petitioner evidence of lawful permanent resident status on December 22, 2006. A copy of that card reflects "Resident Since December 22, 2006." *See Ex. 2.*

23. The government did not rescind or revoke that grant of lawful permanent resident status at the time it was issued, nor did it contemporaneously notify Petitioner that the grant was invalid.

24. In 2009, after the government retained possession of Petitioner's original card, Petitioner filed an application to replace his permanent resident card. That application was filed on August 12, 2009, and resulted in issuance of a replacement card. See I-797 Notice of Receipt, attached as Ex.

25. The issuance of a replacement card in 2009 confirmed, rather than undermined, the government's original grant of lawful permanent resident status to Petitioner.

26. At a later master calendar hearing, after Petitioner had filed a Motion to Terminate, the government demanded in open court that Petitioner surrender the replacement card. Petitioner complied. The government cited no authority establishing that it could invalidate an already-issued grant of lawful permanent resident status merely by reclaiming the card.

27. On April 14, 2013, Petitioner filed another Form I-90, expressly explaining the basis for the request. See *Ex. 4*. The application was initially approved, but that stamp was crossed out and replaced with a denial, because U.S. CIS in-house counsel claimed it was not approvable because Petitioner had an appeal pending. See I-90 with stamps and reason for the denial written in, attached as Gr. Ex. 7

28. On December 12, 2013, the government denied that I-90 application and, for the first time in writing, asserted that there was no record of Petitioner's permanent resident status. See denial attached as Ex. 1.

29. That assertion was contradicted by the government's own prior conduct, including its issuance of Petitioner's original card showing residence since December 22, 2006, and its later issuance of a replacement card in 2009. See Ex. 2 & 3.

30. In prior proceedings before this Court, the government submitted TECs II information dated "042613," which appears to reflect an internal notation entered on or about April 26, 2013. *See Ex. 6*.

31. In the "Remarks" section of that TECs II printout, the government inserted language stating: "I-551 CARD ISSUED UNDER A#078854477 RELATING TO EAC0708151182 WAS ISSUED TO SUBJECT AS PART OF A LAW ENFORCEMENT OPERATION. THIS I-551 DOCUMENT DOES NOT NOR DID NOT CONVEY THE BENEFITS OF A PERMANENT RESIDENT. DO NOT ADJUDICATE." *See Ex. 6*.

32. On information and belief, that internal notation was added years after the government's original grant of lawful permanent resident status and only after Petitioner sought further confirmation of his status through the I-90 process.

33. Nothing in the existing record shows that Petitioner's lawful permanent resident

status was lawfully rescinded when it was granted, or that the government undertook the proper procedure to invalidate that status after granting it.

34. Petitioner later applied for naturalization based on his long-held lawful permanent resident status. That application was denied, as was a more recent I-90 filing, based on the government's expanded assertion that Petitioner had never in fact been granted lawful permanent resident status. It is attached as Ex. 1.

35. Petitioner has since built his life in the United States. He is now a pharmacist, is married to a U.S. citizen, and is the father of two U.S. citizen children.

36. The government has now again initiated removal efforts against Petitioner based on the same underlying facts, while continuing to deny the validity of the status it previously granted him.

37. Petitioner has no adequate administrative remedy by which to obtain review of the government's denial of his I-90 on the ground asserted here, and the government's refusal to acknowledge his lawful permanent resident status is causing him ongoing and substantial harm.

## Count I:

## The Government's Refusal to Acknowledge Petitioner's Permanent Residency, by denying Petitioner's I-90/N-400, based on the Fiction that Petitioner was never a Permanent Resident, is Counter to the Regulations and Statute, and is therefore an Abuse of Discretion & Violates the Administrative Procedure Act

38. Petitioner restates Paragraphs 1-34, as if fully restated here.

39. The Defendants' actions violate federal regulations, the Immigration and Nationality Act, and the Administrative Procedure Act. The Defendants' failure to follow its own

internal memoranda for the issuance of a replace green card (Form I551) is a violation of regulation and statute.

40. Making findings of fact that Petitioner was not really permanent resident, was counter to the legal standards authorized by statute; it was an arbitrary and capricious finding. And because it is *ultra vires* as applied to Petitioner, it violates 5 U.S.C. §706(2)(A).

41. The Agency decision was the refusal to approve Form I-90 on the basis of Petitioner not being a lawful permanent resident, after noting the only reason to do so was that he had an appeal pending and was not eligible. See Ex. 8, showing an approval stamp crossed out, and a denial stamp. The idea he was not a permanent resident was a fiction created in the Tecs II note, made years after his residency was conferred.

42. Petitioner is in the "zone of interest", required to bring suit under the APA. *See Ghaley v. INS*, 48 F.3d 1426, 1434 n.6 (7th Cir. 1995).

43. The government followed its regulations in granting his 2010 I-90. It issued a receipt notice, captured his biometrics, consulted its internal records and issued a replacement card.

44. It was only upon filing his second I-90, the restrictive language in the US CIS note section of its system, emerged. The notes were more likely than not, placed in the system as a result of Petitioner filing the second I-90; they were not likely input when his permanent residency was approved and his card issued, or his first I-90 would not have been approved on the verification portion of the regulatorily-mandated review.

45. The federal court precedent relied on by the government, is readily distinguishable and not of help resolving the issues attendant herein. Petitoner's card was a lawful grant of permanent residency, as evidenced by the government approving two replacement applications. *See e.g., Krasilych v. Holder*, 583 F.3d 962 (7th Cir. 2009)(where the court held a fraudulent, purchased I-551 stamp that was not an actual card, was not sufficient to show permanent residency was granted:"…authorities had never actually issued a green card or processed an application for permanent residence from an alien involved in the investigation"); *Modzden v. Holder*, 622 F.3d 680 (7th Cir. 2010)(where the court held a fraudulently obtained I-551 stamp was not evidence of permanent residency; he had no basis for permanent residency other than buying the stamp); *Asrat v. Barr*, 399 F.Supp.3d 505 (ED VA 2019)(where the agreed facts showed a card was issued in error by the government).

## Prayer for Relief

WHEREFORE, Petitioner prays that this Court will:

1. Assume jurisdiction over this Petition;
2. Issue a Declaratory Judgment declaring that Petitioner's I-90 was improvidently denied, counter to regulation and statute;
3. Issue a Declaratory Judgement declaring Mr. Khalifa has been a permanent resident since the creation of his first card;
4. Order a new I-551 card be manufactured by US CIS, *instanter*;

5. Award attorneys' fees and costs under the Equal Access to Justice Act where appropriate;

6. Grant such further relief as the Court deems just and proper.

Date: April 30, 2026

Respectfully,

*/s/Robert Carpenter*
Carpenter & Capt, Chtd.
53 W. Jackson Blvd., Ste. 1515
Chicago, IL 60604
t (312) 803-5110
rcarpenter@carpenterandcapt.com

Submitted,

/s/ Robert Carpenter
Attorney for the Petitioner

**Verification Pursuant to 28 U.S.C. § 2241**

I represent the Petitioner, Alaa Khalifa, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Administrative Procedure Act Complaint is true and correct to the best of my knowledge based on a review of his case and my conversations with Petitioner directly, as well as his family and other counsel.

Dated this 30th day of April , 2026.

/s/Robert Carpenter